## WESTERN UNION TEL. CO. v. LESESNE.
### No. 6397.

United States Court of Appeals
Fourth Circuit.

Argued June 30, 1952.

Decided July 23, 1952.

John H. Waters, New York City, and E. W. Mullins, Columbia, S. C. (Nelson, Mullins & Grier, Columbia, S. C., on the brief), for appellant.

C. T. Graydon and Augustus T. Graydon, Columbia, S. C. (McLeod & Singletary, Columbia, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This case against the Western Union Telegraph Company comprises two causes

of action for libel based on two telegrams containing statements reflecting upon certain conduct of Thomas P. Lesesne, Jr., which were transmitted by the Telegraph Company at the instance of H. G. Willingham. The first telegram, which was addressed to Lesesne, was filed by Willingham with the company on Saturday evening, October 26, 1946, at Columbia, South Carolina, and was delivered by the company the next day in a sealed envelope to the residence of Lesesne in Columbia, South Carolina. When received it was opened and read by his wife since he was sick in bed at the time. A short time before the telegram was sent, a woman had been killed on the streets of Columbia by an automobile driven by Lesesne and the telegram referring to this circumstance was in the following words:

> "Although you are an administrative Assistant of the South Carolina State Board of Health and a new deal tick that does not give you a license to run through the streets of Columbia and kill women turn over in bed and regret your wrong doings. Although you have tried to kill the case with political pull we are determined to pull you out into the spot light."

The second telegram on which the second cause of action is based was filed with the company on Sunday, October 27, 1946. It was addressed to Dr. James A. Hayne, Director of the State Board of Health with which Lesesne was officially connected, and was delivered to Hayne the following day. The telegram was in the following words:

> "You nor no other Democratic politician is going to be big enough to fix the death that occurred at Wheat and Wood Streets caused by your administrative assistant Thomas Lesesne. I have reported this to the civil rights section of the United States Dept. of Justice. After receiving cover all tactics from highway patrol and Columbia police dept."

The case has been twice tried in the District Court. The first trial resulted in a verdict for the defendant on the first telegram and a verdict in the sum of $2,000 in favor of the plaintiff on the second telegram. An appeal was taken from the judgment in the second cause of action and in our opinion (see 182 F.2d 135) we discussed the company's defense that the communication was privileged. We held that the case was properly submitted to the jury since the contents of the second telegram gave rise to conflicting inferences and hence it was for the jury to say whether the sender was moved by an improper desire to defame the plaintiff or by the motive to bring to the attention of responsible officials the reprehensible conduct of a subordinate; but we reversed the judgment because of the improper admission of evidence prejudicial to the defendant. At the second trial, upon this cause of action, the jury again rendered a verdict for the plaintiff, this time for the sum of $1,833.34, and we are asked to reconsider the question of privilege; but we adhere to the conclusion announced in the prior opinion for the reasons stated therein.

We come then to consider the cause of action based on the first telegram. This was also submitted to the jury at the second trial, because the District Judge had set aside the verdict at the first trial in favor of the defendant. At the second trial the jury rendered a verdict for the plaintiff in the sum of $9,416.66. Obviously the amount was fantastic and excessive in the extreme and bore no possible relation to any damage suffered by the plaintiff. It was conceded at the trial that the company was not actuated by ill will or malice and that the plaintiff was not entitled to punitive damages; moreover, the contents of the telegram were not published except to the plaintiff's wife and to the employees of the company who handled the telegram with many others in the ordinary course of business. The only basis urged in support of the amount of the verdict is that during the period between the receipt of the telegram on October 27 and November 4, 1946, when the coroner's jury exonerated the plaintiff from blame for the woman's death, the plaintiff and his wife were apprehensive of the outcome and temporary doubts were raised in the mind of the wife as to the character of the husband's

conduct. It will be borne in mind, however, that it was the second rather than the first telegram which related to the plaintiff's official employment, and may have been thought to jeopardize his position, and that for this telegram the plaintiff was compensated by the verdict in the second cause of action.

The District Judge was acting well within the limits of his discretion in announcing that he would set aside the verdict unless the plaintiff consented to its reduction, since there was nothing in the record upon which to base a verdict for anything more than a nominal amount. With punitive damages out of the case, only actual damages were recoverable; and the contention that plaintiff suffered any substantial damage as a result of his wife's reading the first telegram or its being read by those who handled it for the telegraph company is not supported by anything in the record. Since we are of the view that defendant was entitled to a new trial upon another ground, we need not pass upon the contention that it was reversible error to put the parties on terms to reduce the verdict as excessive instead of setting it aside as capricious and not supported by the evidence.

█ It is contended by the company on this appeal that the transmission of the first telegram was also privileged; but it is obvious in this case as in the other, and for the same reasons, that the contents of the telegram justfied the submission of the question of privilege to the jury.

Next it is argued that the action of the District Judge in setting aside the verdict for the defendant in the first trial and granting a new trial was erroneous because the plaintiff's motion for a new trial was based only on the theory that the telegram was libelous as a matter of law and that the only question left to the jury was the amount of the damages. The judge, however, gave no reason for his order, and we cannot say that the new trial may not have been granted in the court's sound discretion upon the theory that the question of privilege had been properly submitted to the jury and that the verdict was contrary to the weight of the evidence.

█ It is also argued that the judge erred in the charge in his comments upon a rule of the company which warned its employees not to accept a message containing profane, obscene or libelous language. The judge charged the jury at the instance of the company that despite this rule the company is required to transmit an obviously defamatory message unless it knows or has reason to know that the sender is not privileged to send it; but the judge added the comment that it was the duty of the employees of the company to obey the rule and to refuse to accept a message if they had reason to believe that the message was libelous and that in this case the operator had not asked for instructions. It is now suggested that the jury may have been led to conclude that the failure of the operator to consult a superior is ground for a verdict against the company. We are, however, unable to say that the charge was open to this criticism, although it is obvious that no inference unfavorable to the company may be drawn from a rule which is plainly framed to prevent the transmission of improper messages. The failure of the company's employees to obey the rule can neither create a liability on the part of the company for the transmission of a message which is privileged, nor relieve the company from liability for the transmission of a message which ought not to have been sent.

█ Finally we reach the ruling of the District Court on the nature of the publication of the contents of the telegram to some one other than the plaintiff, which was a condition of recovery on his part. The contents of the first telegram became known to the agents of the company when it was filed in the company's office and placed in the hands of an agent of the company for transmission to the addressee; and it also became known to the wife of the plaintiff when she opened it upon its delivery to the plaintiff's residence. The instructions of the court on these two circumstances are the subject of objections on the part of the appellant.

As to the communication of the contents of the telegram to the wife, the District Judge told the jury that the transmission

and delivery of a libelous telegram to the person defamed does not constitute publication in the meaning of the law, even though the matter actually reached the hands of a third person, unless the Telegraph Company intended or should have reasonably expected that the telegram would be opened and read by a third person. The court, in addition, commented strongly upon the probability that a telegram addressed to a man at his residence might be read in his absence by his wife.

■■ Insofar as these instructions left the determination of the matter to the jury, we find no departure from the prevailing rule in South Carolina. In Riley v. Askin & Marine Co., 134 S.C. 198, 132 S.E. 584, 46 A.L.R. 558, the defendant mailed a letter containing a libelous statement to a 17 year old girl which was opened and read by her parents and it was held that there was no publication in law since it was not reasonable for the company to assume that the parents of such a girl would open and read her mail without her consent. The company cites this decision as ground for a directed verdict in its favor as to the first telegram, since the evidence shows that the message was delivered to the plaintiff's residence in a sealed envelope on a Sunday morning when he would probably be and was in fact at home, and since the wife testified that she would not have opened the telegram except for the fact, unknown to the defendant company, that her husband was sick in bed. We think, however, that the question was for the jury, for in the Riley case the court quoted with approval passages from the authorities to the effect that publication of a libelous communication addressed to a person occurs if it falls into the hands of a third person and is read, provided the sender has good reason to believe that the message is likely to be opened by such a person. Since the instant case involves a telegram with its implications of emergency and haste, we are of opinion that the facts did not justify a binding instruction either way upon the question of publication, but required its submission to the jury.

■ With respect to the communication of the message to the agents of the Telegraph Company who handled it, the court instructed the jury that although the reception, handling and delivery of a libelous telegram by agents of a Telegraph Company does not of itself constitute publication, provided the contents of the message are not disclosed to any one else, yet if the telegram is not privileged, communication thereof to the agents of the company is a publication which entitles the addressee of the message to recover. It will be observed that this instruction withdrew the question of publication from the consideration of the jury and confined their determination to the question of privilege; and it has been so treated by the attorneys in this case. In other words, the judge laid down the rule that publication of a libelous message occurs when it is handled in transmission by the agents of a telegraph company.

■ We think this instruction was erroneous under the law of South Carolina. In Rodgers v. Wise, 193 S.C. 5, 7 S.E.2d 517, the Supreme Court of South Carolina said that in the older cases the dictation of a libelous statement by a business man to a stenographer has been held to be a publication, but that the more recent and better considered cases hold that such a communication does not constitute publication in the sense of the law of libel. There was reference in the decision to the authorities holding that when a communication is made by an officer or agent of a corporation to an associate in the ordinary course of business, there is no publication and no actionable libel. The principle of this case was reaffirmed in Watson v. Wannamaker, 216 S.C. 295, 57 S.E.2d 477. The contrary statement in the opinion of Mr. Justice Watts in James v. Western Union Tel. Co., 130 S.C. 533, 547, 126 S.E. 653, that the forwarding of a telegram by one operator of a telegraph company to another is a publication appears in a dissenting opinion, and has not been followed in subsequent decisions of the court. South Carolina belongs to the group of authorities which adhere to the view that communications between employees of a corporation in the course of their employment is not a publication for which the employer is liable. See the cases listed in 166 A.L.R. 119 to 123. The rule is of course different when the sender of the

158

message is the defendant, for as to him the deposit of the message with the Telegraph Company is a sufficient publication.

█ The verdict in this case was a general one and it is therefore uncertain on what ground the jury based its conclusion that the necessary publication of the message had taken place. It may well be that the jury were influenced by the erroneous instructions that the handling of the libelous telegram by the agents of the company was enough to constitute publication in the sense of the law.

The judgment of the District Court will be affirmed as to the second cause of action, but will be reversed as to the first cause of action, and the case remanded for a new trial.

Affirmed in part.

Reversed in part and remanded.