## HARTZOG v. UNITED PRESS ASS'NS.

### No. 6513.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 9, 1953.

Decided Feb. 18, 1953.

W. J. McLeod, Jr., Walterboro, S. C., and Yancey A. McLeod, Columbia, S. C. (Jefferies, McLeod, & Unger, Walterboro, S. C. and McLeod & Singletary, Columbia, S. C., on brief), for appellant.

David W. Robinson, Columbia, S. C. (Robinson, Robinson & Dreher, Columbia, S. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Gerard Hartzog instituted a civil action for libel, in the United States District Court for the Eastern District of South Carolina, against United Press Associations. Upon the trial of the case with a jury, the Dis-

trict Judge directed a verdict for the defendant on the ground "that the plaintiff has not established actionable defamation as claimed by himself." Plaintiff has duly appealed to us.

There was evidence at the trial tending to show the following facts set out in this paragraph. Plaintiff is a duly licensed attorney, engaged in the practice of law and specializing in the tax field, at Charleston, South Carolina. On July 25, 1950, he attended, at Sumter, South Carolina, an executive session of the South Carolina Republican Executive Committee, of which he was a member. Subsequent to the meeting, defendant disseminated the alleged defamatory statements about plaintiff, which were published in a number of newspapers and broadcast over several radio stations, without any effort to check the accuracy of the facts stated in the publications. McCarthy, agent of appellee, interpolated stronger language and added to the original report received by him. There was no retraction by the defendant, though this was demanded by the plaintiff. Defendant, however, did publish plaintiff's denial of the truth of the facts.

The following are the pertinent excerpts from the publications in question:

. "Sumter City Police were posted in front of the meeting room after Publicity Chairman Gerald Hertzog of Charleston was forcibly ejected."

" * * *, and a Charleston member, Gerald Hertzog was forcibly kicked out, at Committeeman Gerald's request."

"Gerard Hartzog of Charleston a party official, was forcibly ejected from the session by police at Gerald's request."

Defendant admitted the dissemination of the publications in question; that it is engaged in the business of collecting news and disseminating it to a number of subscribers, both newspaper and radio. It was admitted by defendant at the trial that its report of the meeting was incorrect insofar as it was stated that the plaintiff was forcibly ejected from the room. Defendant denied both the libelous character of the publica-

tions and the damages alleged to arise therefrom.

Further, the defendant introduced evidence for the purpose of discrediting plaintiff's ability as a lawyer and of showing reasons other than the publications for plaintiff's loss of professional income. Quite a great deal of evidence was also introduced by defendant as to the affairs of the Republican Party in South Carolina and as to plaintiff's relations to that party and other members thereof.

■ It is well settled that fair and impartial reports of public meetings are qualifiedly privileged; 53 C.J.S., Libel and Slander, § 123, p. 201 et seq.; 33 Am.Jur. p. 161 et seq. The doctrine of privilege, however, does not extend to misstatements of fact even in these reports; and a defamatory publication is actionable if false, regardless of the question of good faith or reasonable belief. 33 Am.Jur. p. 164 and cases cited in Note 6. The defense of privilege cannot avail the defendant with respect to the statement, which has no foundation in fact, that plaintiff had been ejected from the meeting by the police.

In Lesesne v. Willingham and Western Union Telegraph Co., D.C., 83 F.Supp. 918, 921, District Judge Wyche stated:

"It seems to be well settled in this State (South Carolina) that any words which falsely or maliciously charge the commission of a crime, or which distinctly assume or imply one has committed a crime, or which raise a strong suspicion in the minds of hearers or readers that one has committed a crime, or which plainly and falsely charge the contraction of a contagious disease, adultery or a want of chastity, or unfitness in the way of a profession or trade, or *any written or printed words which tend to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible, or ridiculous, are actionable per se*. Duncan v. Record Publishing Company, 145 S.C. 196, 143 S.E. 31; Turner v. Montgomery Ward

& Co., 165 S.C. 253, 163 S.E. 796; Lily v. Belk's Department Store, 178 S.C. 278, 182 S.E. 889; Galloway v. Cox, 172 S.C. 101, 172 S.E. 761, 762; Sanifer [Sandifer] v. Electrolux Corporation, 4 Cir., 172 F.2d 548, 550. In the last cited case it was said by the Circuit Court of Appeals of the Fourth Circuit: 'And as a logical matter it should be immaterial whether the commission of a crime is charged positively and directly by words of clear and unmistakeable meaning or only indirectly and by means of innuendo. So long as the words are understood by third persons to make the charge, the effect from the standpoint of damage done may be calculated to be the same.' It has, in fact, been noted several times by the South Carolina courts that a hidden charge made by insinuation and innuendo may inflict graver injury and injustice than a direct and specific accusation which, if false, may be more easily met and refuted." (Italics ours.)

This case was also before us, Western Union Tel. Co. v. Lesesne, 4 Cir., 182 F.2d 135, Id., 4 Cir., 198 F.2d 154.

The words spoken by the auditor of defendant to plaintiff in Sandifer v. Electrolux Corporation, 4 Cir., 172 F.2d 548, 549, were: "I want the machines now or I want the money or I will report you to the bonding company immediately".

In Grant v. Reader's Digest Association, 2 Cir., 151 F.2d 733, 735, Circuit Judge Learned Hand stated:

"The New York decisions define libel, in accordance with the usual rubric, as consisting of utterances which arouse 'hatred, contempt, scorn, obloquy or shame', and the like."

In Restatement of Torts, Vol. 3, page 140, Section 559, it is stated:

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."

And Mr. Justice (afterwards Chief Justice) Bonham, in Galloway v. Cox, 172 S.C. 101, 104, 172 S.E. 761, 762, quotes with approval this excerpt from Black's Law Dictionary (3d. Ed.) page 1104:

"If a written or printed publication tends to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible or ridiculous, it is 'libelous per se', * * *."

In Restatement of Torts, Vol. 3, Section 573, we find:

"One who falsely and without a privilege to do so, publishes a slander which ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, profession, or his public office whether honorary or for profit, is liable to the other."

"* * * It is not necessary that the defamer refer to the other as engaged in the particular profession or calling in question. It is enough if the statement is of a character to be particularly disparaging of one engaged in such an occupation. * *"

■ In the light of what has been said above, we think the District Judge erred in directing a verdict for the defendant, thus holding that, as a matter of law, the publications in question were not actionable. We think this question was one for the jury to decide, on proper instructions from the court. It was, as a matter of fact, a question within the province of the jury to decide whether the statements in question—to the effect that plaintiff was forcibly ejected (or forcibly kicked out) from the meeting of the Committee by police called by Committeeman Gerald —were or were not defamatory and actionable as tending to reduce plaintiff's character or reputation, to render him odious, contemptible or ridiculous, or diminish his reputation in his profession. We cannot say, as a matter of law, that the publications in question did not tend to bring about at least one of these effects.

■ It is not necessary that the publication directly charge the commission of a

crime or even precisely imply moral obliquity in order to be defamatory and actionable. The test is how the words in the publication may normally be understood by third persons.

The judgment of the District Court is reversed, and the case is remanded to that court for a new trial.

Reversed and remanded.