BRUSH-MOORE NEWSPAPERS, INC. *v.* POLLITT

[No. 241, September Term, 1958.]

*Decided May 14, 1959.*

*Motion for rehearing filed May 20, 1959, denied June 4, 1959; opinion and judgment and terms of remand modified herewith.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and HORNEY, JJ.

*Charles E. Hearne, Jr.,* and *Hamilton P. Fox, Jr.,* with whom were *William H. Vodrey, Jr.,* and *Godfrey Child* on the brief, for the appellant.

*John B. Robins* and *Richard M. Pollitt,* with whom were *John L. Sanford, Jr., Stanley G. Robins* and *Vaughn E. Richardson* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Jesse M. Pollitt, the sheriff of Wicomico County, sued the appellant for an alleged libel which appeared in "The Salisbury

Times" on November 14, 1956. The trial court sustained a demurrer to the declaration, but on appeal to this Court we reversed. *Pollitt v. Brush-Moore Newspapers, Inc.,* 214 Md. 570. After various further pleadings, the case was removed to Worcester County for trial, which resulted in a jury verdict for $12,000. There was a motion for judgment n. o. v., or in the alternative, for a new trial, which was denied and judgment entered. The appeal is from that judgment.

A reporter for the "Times," Mr. Gould, attended a regular meeting of the County Commissioners of Wicomico County on November 13, 1956. At this meeting Mr. Naegele, a partner in the firm of F. W. LaFrentz & Co., accountants, presented a report of his annual audit of the books of various county offices, including the sheriff's office, for the year ending June 30, 1956, with recommendations. The report was discussed, and the commissioners appointed a committee to discuss the recommendations with the sheriff. Gould obtained a copy of the report and took it home to study. The next morning he wrote the news article, which is the basis of this suit, and after approval by the news editor, it was delivered to the press room and appeared on the front page of the paper. After the first copies of the paper, some 400 to 800 in number, had been printed, a mistake in the article was discovered by another employee in the newsroom. The press was stopped, and a correction made. About 250 copies had been delivered, however, to the advertising, editorial and circulation departments of the paper, and about 200 copies had been delivered to downtown newsstands.

The circulation manager was advised of the mistake and its correction. He dispatched an employee to the various newsstands to pick up the incorrect copies and replace them with correct copies. The incorrect copies were withdrawn from circulation. There was testimony that none of the incorrect copies were distributed to carriers or subscribers. However, Mrs. Kolb, daughter of the plaintiff, who with her husband operates a general store, identified an incorrect copy, plaintiff's exhibit No. 1, as being "like the paper" she received for distribution. The mere fact that exhibit No. 1 was an incorrect copy would seem to demonstrate that not all the incorrect

copies were destroyed. The circulation manager testified that to the best of his knowledge all of the incorrect copies were retrieved, although he admitted "there were probably some we didn't get. After all, you have about fifteen people all wanting papers at once. It's pretty hard to get them all back." In answer to a question as to whether some could have gotten out, he replied "that is right." On November 15, 1956, the "Times" published a correction on its front page.

The article complained of, as set out in the declaration, was summarized in our opinion in *Pollitt v. Brush-Moore Newspapers, Inc., supra,* and need not be repeated here. Suffice it to say that a word in one sentence in the auditor's report, stating that the record kept by the sheriff for booking prisoners was "complete," had been erroneously quoted in the article as "incomplete." We held that this charged the sheriff with a violation of local law carrying a criminal penalty, and hence charged the commission of a crime, which made the statement libelous *per se.* We also held that the article was libelous *per se* because it imputed to the sheriff conduct incompatible with the proper conduct of his office, and tended to degrade and expose him to contempt and ridicule. These holdings were based not only upon the inaccurate quotation of the one sentence, but upon the fact that the article also charged the sheriff "with non-compliance with the law on account of incompleteness of records concerning fees and collection costs." The article also interpolated a statement reiterating a story, previously carried by the "Times," on a purported erasure in the "jail log" kept by the sheriff, and the substitution of a fictitious name. This incident was not within the period covered by the auditor's report.

The appellant contends that there was no evidence of publication, but we do not agree. Publication was put in issue by the general issue plea, and was submitted to the jury. Distribution of copies to the employees of the newspaper would alone be evidence of publication. See *Gambrill v. Schooley,* 93 Md. 48 (dictation to a stenographer); *Bander v. Metropolitan Life Ins. Co.,* 47 N. E. 2d 595, 602 (Mass.) (intracorporate communications); note 166 A.L.R. 114; Newell, *Slander and Libel* (3d ed.), § 262; 3 *Restatement,*

*Torts,* § *577, Comment e* (publication complete even though entitled to a qualified privilege under § 593). The distribution to newsstands, and the testimony of Mrs. Kolb, would also tend to support an inference that some of the incorrect copies came into the hands of readers. The publication of the corrected copies was undisputed.

The chief contention of the appellant is that the publication of the article was privileged. That contention was made in the previous appeal, and our answer was that the defense of qualified privilege cannot be raised on demurrer, citing *Walker v. D'Alesandro,* 212 Md. 163, 169, and cases cited. See also *Thompson v. Upton,* 218 Md. 433, 439. In the previous appeal in the *Pollitt* case, we added the comment that "As to the claim that all reports of the proceedings of superior tribunals and legislative bodies are privileged, we see no reason why an auditor's report should be in this classification." The comment requires some elucidation.

It is a general rule that the official *participants* in judicial and legislative proceedings enjoy an immunity from actions for defamation, described as an absolute privilege, on grounds of public policy. But it has been stated that the rule should not be extended "beyond the strict line established by a concurrence of decisions." *Maurice v. Warden,* 54 Md. 233, 254. See also 3 *Restatement, Torts,* § 590, *Comment c;* Prosser, *Torts* (2d ed.), § 95, p. 611; 69 Harv. L. Rev. 875, 917. Whether such immunity extends to the proceedings of boards exercising delegated legislative or quasi-legislative powers, or to subordinate officials, is a question on which the decisions are not in accord. In *Peeples v. State,* 38 N. Y. S. 2d 690, a suit against the State under the Court of Claims Act, based on a published report by a state auditor of his examination of the records of a police justice, it was held that the report was not absolutely privileged, but was entitled to a qualified privilege that shifted the burden to the plaintiff to prove abuse of the privilege. Qualified or conditional privilege may exist in a wide class of cases, including cases where the defamation is incident to the *bona fide* discharge of a public or private duty. Cf. *Domchick v. Greenbelt Consumer Services,* 200 Md. 36, 45; *Jump v. Barnes,* 139 Md. 101, 105. See also

*Montgomery v. City of Philadelphia,* 140 A. 2d 100 (Pa.). It may be shown under a general issue plea, and need not be specially pleaded, as in the case of truth by way of justification. See Maryland Rule 342 b 3, and c 2(h). Cf. *Hagan v. Hendry,* 18 Md. 177, 192.

All this is beside the point. If we assume, without deciding, that the county commissioners, or the auditor, enjoy a privilege, either absolute or qualified, it is clear that a newspaper publishing an account of the proceedings, when they have been made a matter of public record, is protected only to the extent that its account is fair and substantially correct. *McBee v. Fulton,* 47 Md. 403, 426; *Negley v. Farrow,* 60 Md. 158, 177; *Coffin v. Brown,* 94 Md. 190, 196; *Evening News Co. v. Bowie,* 154 Md. 604, 611. See also *Sweet v. Post Pub. Co.,* 102 N. E. 660 (Mass.); *Whitcomb v. Hearst Corp.,* 107 N. E. 2d 295 (Mass.); *Hartzog v United Press Ass'ns,* 202 F. 2d 81 (C.C.A., 4th Cir.); Harper and James, *Torts,* § 5.24, p. 432; 3 *Restatement, Torts,* § 611, *Comment d.* The falsity of the words, which we held on demurrer to be libelous *per se* and hence to require no proof of special damage and to carry the implication of malice, was not put in issue by the pleadings, and, at least as to the sentence charging a crime, was not controverted in the testimony. The appellant argues that the mistake was corrected, and that the remainder of the article was a fair and accurate account of the report. We do not agree. The correction did not vitiate the cause of action based upon the use of the word "incomplete" in the original, limited publication. Furthermore, a bare comparison of the corrected article as a whole, with the auditor's report, shows that the account was garbled and that conclusions purportedly drawn from the report were unwarranted. Since the facts were uncontradicted, we find no error in the trial court's refusal to submit the question of qualified privilege to the jury; as already seen, there was no showing of a privileged occasion. We may also observe that the defense of fair comment, if properly raised, can only prevail when the facts on which it is based are truly stated or privileged. Harper and James, *supra* (p. 459). It is conceded in the instant case that the auditor's report did not

charge the sheriff with any wrongdoing or neglect of duty, as the article did.

We find no error in the trial court's charge that the jury should award punitive damages only if they found that the publication was wilful and malicious. Indeed, the charge may have been more favorable to the defendant than the circumstances of the case required. Cf. *Coffin v. Brown, supra* (p. 198).

We find error, however, in the refusal of the trial court to charge the jury in regard to mitigation of damages. Objection was taken specifically to the failure to instruct that the jury might consider the facts that the defendant stopped its press and made efforts to retrieve the papers carrying the erroneous word "incomplete," and that it published a correction next day, if they should so find, in mitigation of damages. While there seems to be no Maryland case directly in point, it is generally held that mitigation of damages is a partial defense to defamation, as tending to reduce both the general compensatory damages and to negative the express malice, or outrageous conduct, which is the basis for punitive damages. See 53 C.J.S. *Libel & Slander,* § 250; Prosser, *Torts* (2d ed.), § 96, p. 633; 3 *Restatement, Torts,* § 621, *Comment c;* 32 Ill. L. Rev. 36. Cf. 35 Harv. L. Rev. 867. We think the appellant was entitled to the instruction, even though pertinent only to the misquotation of the sentence charging a crime.

In accordance with Rule 872 of the Maryland Rules the judgment will be affirmed as to the determination of liability and reversed as to damages and the case will be remanded for a new trial as to the amount of damages.

> *Judgment affirmed as to determination of liability and reversed as to damages and remanded for a new trial as to the amount of damages. Costs of this appeal to be equally divided between the parties.*