R. Lynn BROWN, Plaintiff,

v.

COURIER HERALD PUBLISHING COMPANY, INC. d/b/a The Courier Herald and the Associated Press, Defendants.

R. Lynn BROWN, Plaintiff,

v.

Gene ROGERS d/b/a W.U.F.F. Radio and The Associated Press, Defendants.

R. Lynn BROWN, Plaintiff,

v.

Edwin H. BOWEN d/b/a Telfair Enterprise and the Associated Press, Defendants.

R. Lynn BROWN, Plaintiff,

v.

The ALBANY HERALD PUBLISHING CO., INC. d/b/a The Albany Herald and the Associated Press, Defendants.

Civ. A. Nos. CV388–25 to CV388–27 and CV388–39.

United States District Court, S.D. Georgia, Dublin Division.

Nov. 11, 1988.

four actions currently are pending in the Dublin Division of this District.

Pamela M. Richards, Warner Robins, Ga., for plaintiff.

David E. Hudson, Augusta, Ga., Francis M. Lewis, Dublin, Ga., for Courier Herald Pub. Co., Inc. and Associated Press.

William E. Hicks, Milton Harrison, Eastman, Ga., David E. Hudson, Augusta, Ga., for Gene Rogers and Associated Press.

David E. Hudson, Augusta, Ga., Lamar Murdaugh, McRae, Ga., for Edwin H. Bowen and Associated Press.

William H. Major, Atlanta, Ga., David E. Hudson, Augusta, Ga., David M. Zacks, Atlanta, Ga., for Albany Herald Pub. Co., Inc. and Associated Press.

## ORDER

BOWEN, District Judge.

Before the Court are (a) the suggestion for consolidation of the captioned cases made by certain parties; (b) the motions of plaintiff and defendant Gene Rogers d/b/a W.U.F.F. Radio ("Big Wuff Radio") (hereinafter "Rogers") to remand the captioned cases to the Georgia state courts in which they were filed; and (c) certain defendants' motions for summary judgment based on the so-called "wire service defense."

## FACTS

Plaintiff filed four separate actions in Georgia state courts in four different counties. Each action involved an admittedly inaccurate Associated Press ("AP") release that identified plaintiff as an indictee who had threatened the life of a federal witness. This news story was published in the next editions of three local newspapers and transmitted by W.U.F.F. Radio. Plaintiff alleges that the libel damaged him. Each of plaintiff's actions names as defendants AP and a local media organization. Asserting 28 U.S.C. § 1441(c) (1982) (section 1441(c)), as its basis, AP removed all four actions to federal court. After one of the actions was transferred to this Court, all

## CONSOLIDATION

The captioned cases are based on separate publications of the same AP release, and many of the factual and legal issues in the cases are identical. Consolidation of the captioned cases would promote judicial economy. Civil action number CV388–025 was the first of the four captioned cases that AP removed to this Court. Accordingly, the captioned cases hereby are CONSOLIDATED into CV388–025 for all purposes. *See* Fed.R.Civ.P. 42(a). All further expressions in this order relate to the captioned cases *as consolidated.* In the future, the caption of the case shall so reflect.

## JURISDICTION

A federal court must examine its jurisdiction *sua sponte* even if no party raises the issue. *See Mount Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977). Moreover, "the mere consent of parties cannot confer upon a court of the United States the jurisdiction to hear and decide a case." *See American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 18 n. 17, 71 S.Ct. 534, 542 n. 17, 95 L.Ed. 702 (citations omitted). Therefore, this Court will consider its jurisdiction over all parties in this consolidated case even though most of the parties apparently have no objection to proceeding in this Court.

This Court does not have jurisdiction over cases in which nondiverse defendants are present unless the case otherwise is removable under section 1441(c). *See American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 16–19, 71 S.Ct. 534, 541–43, 95 L.Ed. 702 (1951). Therefore, because nondiverse defendants are present in this case, the only possible basis for this Court's jurisdiction is section 1441(c).

Surprisingly, my research revealed only two cases in either a federal circuit court or the Supreme Court in which the court applied section 1441(c) to a libel action against at least two separate defendants in which

there were separate publications of the same allegedly libelous material. *See Marrical v. Detroit News, Inc.*, 805 F.2d 169, 170 (6th Cir.1986); *M.F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167, 169 (10th Cir.1968). In both of those cases, the courts assumed, without analysis, that removal was proper under section 1441(c). Because of the complete absence of any controlling, or even persuasive, appellate authority on the issue, this Court's task is to apply the language of section 1441(c), as authoritatively construed by the Supreme Court in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 9–14, 71 S.Ct. 534, 537–40, 95 L.Ed. 702 (1951), to the facts of this case.

Section 1441(c) provides that:

[w]henever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

28 U.S.C. § 1441(c) (1982).

Construing this provision, the Supreme Court concluded "that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." 341 U.S. at 14, 71 S.Ct. at 540 (footnote omitted).

In *Finn*, plaintiff alleged alternative claims against two insurance companies and their local agent for recovery of a single fire loss. *See* 341 U.S. at 7–8, 71 S.Ct. at 537; *Seymour v. A.S. Abell Co.*, 557 F.Supp. 951, 953 (D.Md.1983). In this case, contrastingly, plaintiff does not allege alternative grounds for relief against AP and the local media defendants, but instead alleges that he was wronged by each separate publication. *Cf.* 557 F.Supp. at 953. Significantly, although plaintiff alleges that defendants are jointly liable for his alleged injury, he does not allege a conspiracy or joint action. *Cf. id.* at 953–54. "It is a well-established principle of tort law that each publication of a libel constitutes a separate and independent tort." *Id.* (citing *Cianci v. New Times Publishing Co.*, 639 F.2d 54, 60–61 (2d Cir.1980); *Dixson v. Newsweek, Inc.*, 562 F.2d 626, 630–31 (10th Cir.1977)). Therefore, because plaintiff does not allege a conspiracy or joint action, plaintiff's claims against each defendant are separate and independent claims or causes of action within the meaning of section 1441(c). 557 F.Supp. at 954 (citing numerous cases). Accordingly, this case properly was removed under section 1441(c), and this Court has jurisdiction over this case. Therefore, all pending motions to remand this case are DENIED.

### WIRE SERVICE DEFENSE

Defendants Courier Herald Publishing Company, Inc., d/b/a The Courier Herald ("Courier Herald"), Edwin H. Bowen d/b/a Telfair Enterprise ("Bowen"), and The Albany Herald Publishing Company, Inc., d/b/a The Albany Herald ("Albany Herald"), move that this Court grant summary judgment in their favor based on the wire service defense. The Georgia courts have not had the occasion to decide whether Georgia should adopt the wire service defense. Nevertheless, this Court's duty is to decide, not avoid the question. *See Meredith v. City of Winter Haven*, 320 U.S. 228, 237–38, 64 S.Ct. 7, 12–13, 88 L.Ed. 9 (1943); *Stool v. J.C. Penney Co.*, 404 F.2d 562, 563 (5th Cir.1968); 19 C. Wright, A. Miller, E. Cooper, *Federal Practice & Procedure* § 4507 at 99 (1982) [hereinafter "Wright"].

This Court's task under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), and its progeny is to discern whether the Supreme Court of Georgia would adopt the wire service defense if the issue was properly presented to that Court. A federal court should consider all available legal sources, including decisions from other jurisdictions, when the court endeavors to vicariously create state law for the purpose of deciding the case before it. *Imperial Enter. v. Fireman's Fund Ins. Co.*, 535 F.2d 287,

290 (5th Cir.1976) (citing *Tompkins v. City of El Paso,* 449 F.2d 842 (5th Cir.1971)); *Wright, supra* § 4507 at 100–101. The federal court may not adopt its own policy preference, however, but must choose the rule that it believes the state's highest court is likely to adopt sometime in the future from all that is known about its methods of reaching decisions. *See* 535 F.2d at 290; *Wright, supra* § 4507 at 103. With these principles in mind, I will render my best judgment concerning whether the Supreme Court of Georgia would adopt the wire service defense if the issue properly were presented to it. Under the present rules, I cannot certify the question to the Supreme Court of Georgia.

■ The wire service defense first was introduced in *Layne v. Tribune Co.,* 108 Fla. 177, 146 So. 234 (1933) (*en banc*). The wire service defense is available if a local media organization republishes a release from a reputable news agency without substantial change and without actually knowing that the article is false. *See Nelson v. Associated Press, Inc.,* 667 F.Supp. 1468, 1478–80 (S.D.Fla.1987). The defense is available if there is nothing on the face of the wire service release that would put the local media organization on notice that the news story may be inaccurate. *See id.* at 1479. The rationale for providing the defense is that placing a duty on local media organizations to independently verify wire service releases "would be time consuming and expensive, [and] imposing such a burden would probably force smaller publishers to confine themselves to stories about purely local events." *Id.* (quoting *Appleby v. Daily Hampshire Gazette,* 395 Mass. 32, 478 N.E.2d 721, 725–26 (1985)). Imposing such a duty on local publishers would result in " 'apprehensive self-censorship' " that is repugnant to the first amendment. *Id.* (quoting *Appleby,* 478 N.E.2d at 725–26).

As the foregoing discussion has demonstrated, the wire service defense merely refines the definition of the duty of a local media organization to avoid publishing false material. Stated simply, when a local media organization receives a wire service release, it has a duty to read the release to ensure that the face of the story itself does not contain any inconsistencies. The local media organization also has a duty to refrain from publishing the news story if the news organization knows the story is false or if the release itself contains unexplained inconsistencies. The local media organization does not have a duty, however, to independently verify the accuracy of the wire service release.

■ Although Georgia courts never have addressed this issue directly, those courts have discussed general principles of tort law that would support the adoption of the wire service defense. As a general rule, if a person has a duty toward another person under Georgia tort law, that duty is to exercise "ordinary care" to avoid harm to that person. *See Harlan v. Six Flags Over Georgia, Inc.,* 250 Ga. 352, 353, 297 S.E.2d 468, 469 (1982). The usual meaning of the term "ordinary care" in the context of a local media organization's handling of a wire service release would not require that organization to independently verify the accuracy of the wire release of a reputable news agency. Imposing such a requirement on a local media organization would be to impose a duty of extraordinary care, not ordinary care. Based on my interpretation of the Georgia courts' use of the term "ordinary care," and the fact that a neighboring state jurisdiction has adopted the wire service defense, my best judgment is that the Supreme Court of Georgia would adopt the wire service defense if the issue properly were presented to that court.

Defendants Courier Herald, Bowen, and Albany Herald all have submitted affidavits stating that they reprinted the AP news story about plaintiff without substantial change and without independently verifying the story's accuracy. After examining the AP release and the stories printed in the publications of the local media defendants, I conclude as a matter of law that defendants Courier Herald, Bowen, and Albany Herald reprinted the AP release without substantial change and that there was nothing on the face of the AP

release itself that reasonably would have alerted those defendants to the possibility that the material in the AP release was inaccurate. Plaintiff has not alleged that any of the defendants in this case actually knew that the AP release was false. Therefore, defendants Courier Herald, Bowen, and Albany Herald have demonstrated their entitlement to the wire service defense.[1] Accordingly, defendants Courier Herald, Bowen and Albany Herald's motions for summary judgment are GRANTED.[2]

## CONCLUSION

To recapitulate: (1) The captioned cases are CONSOLIDATED and hereafter shall proceed as CV388–025; (2) The Court determines that it has jurisdiction over the case as consolidated and DENIES all pending motions to remand; (3) Defendants Courier Herald, Bowen, and Albany Herald's motions for summary judgment based on the wire service defense are GRANTED, and the consolidated case is DISMISSED with prejudice with respect to those defendants; and (4) The consolidated case hereafter shall proceed *only* with respect to plaintiff's claims against defendants AP and Rogers.

1. Plaintiff protests that summary judgment is premature in this case because he has not had a chance to complete discovery so that he can attempt to controvert defendants' assertions. On the record before me, the only conceivable fact that would defeat the application of the wire service defense is a submission demonstrating that one of the local media defendants in this case published information concerning plaintiff even though that media organization actually knew that the material it published was false. Plaintiff does not, however, even allege actual knowledge on the part of any defendant but merely alleges that the publication of the material at issue by each defendant "was done with a reckless disregard for the truth." Plain-

tiff's Complaint at ¶ 5. Accordingly, summary judgment is appropriate on the present record.

2. Defendant Gene Rogers d/b/a W.U.F.F. Radio ("Big Wuff Radio") (hereinafter "Rogers"), has not submitted a motion for summary judgment to this Court, preferring instead to submit to this Court a motion to remand this case to state court. Although I suspect that Rogers is entitled to summary judgment based on the wire service defense, because Rogers has not developed the record fully, I will not decide this issue with respect to Rogers unless and until Rogers properly submits a motion to this court and plaintiff has an opportunity to respond to the motion.